**Form 210A (10/06)**           **United States Bankruptcy Court**

Southern District of AL (Mobile)

In Re: BEN R PAGE                          Case No: 06-12073
NOEL G PAGE

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE, or deemed filed under 11 U.S.C. § 1111 (a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in the evidence and notice.

| | |
|---|---|
| GE Money Bank | Chevron Credit Bank NA |
| --------------------------- | --------------------------- |
| Name of Transferee | Name of Transferor |

| | |
|---|---|
| Name and Address where notices to transferee should be sent: | Court Claim # (if known): 6 |
| GE Money Bank | Amount of Claim: $138.86 |
| c/o Recovery Management Systems Corporation | Date Claim Filed: 11/14/2006 |
| 25 SE 2nd Ave Ste 1120 | |
| Miami FL 33131 | |
| | |
| Phone: (305) 379-7674 | Phone: (800) 554-1377 |
| Last Four Digits of Acct # :4146 | Last Four Digits of Acct # : |
| Name and Address where transferee payments Should be sent (if different from above) | |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of knowledge and belief.

By: /s/ Ramesh Singh                          Date: February 8, 2010
-----------------------------------
Ramesh Singh
25 SE 2nd Ave Ste 1120
Miami FL 33131
claims@recoverycorp.com
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571

## Assignment and Assumption Agreement

This Assignment and Assumption Agreement is executed and delivered as of this 7th day of December, 2007, by and among Chevron U.S.A. Inc., a Pennsylvania corporation (the "Company"), Chevron Credit Bank, National Association, a national banking association with its principal office located in the State of Utah and which is a wholly owned subsidiary of the Company ("Chevron Bank", and, together with the Company, the "Sellers") and GE Money Bank, a federal savings bank ("Buyer").

### WITNESSETH

WHEREAS, Sellers and Buyer have entered into a Purchase and Assumption Agreement dated as of August 29, 2007 (the "Agreement"), which provides for the assignment by Sellers of all their rights and interests in and to certain assets and liabilities, all as set forth in the Agreement. Capitalized terms used but not defined herein shall have the meanings given such terms in the Agreement.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Sellers and the Buyer, each of Sellers hereby sells, assigns, transfers, and sets over to the Buyer all of such Seller's rights and interest to, and Purchaser does hereby assume all of such Seller's liabilities and obligations in connection with, the following assets and liabilities shown on Schedules 1 and 2 attached hereto, respectively, and incorporated herein by reference.

This Assignment and Assumption Agreement shall be binding upon, and shall inure to the benefit of, Sellers, the Buyer, and each of their successors and assigns, and shall be subject to the terms and conditions of the Agreement. In the event of a conflict between any of the terms and provisions hereof and the Agreement, the Agreement shall be deemed to control.

This Assignment and Assumption Agreement, and the rights and obligations of the parties hereunder, shall be governed by and construed in accordance with the laws of the State of New York.

[Signatures on Following Pages]

ATI-2297875v1

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their respective duly authorized officers as of the day and year first above written.

ATTEST:                                    CHEVRON U.S.A., INC.

By: _____               By: _____
Name: HOSSGYAN XUN                         Name: FRANK G. SOLER
Title: ASSISTANT SECRETARY                 Title: ASST. SECRETARY


ATTEST:                                    CHEVRON CREDIT BANK, NATIONAL
                                           ASSOCIATION

By: _____               By: _____
   Name:                                      Name:
   Title:                                     Title:


ATTEST:                                    GE MONEY BANK

By: _____               By: _____
   Name:                                      Name:
   Title:                                     Title:


[CHEVRON/GE US ASSIGNMENT AND ASSUMPTION AGREEMENT]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their respective duly authorized officers as of the day and year first above written.

ATTEST:

By:_____
    Name:
    Title:

CHEVRON U.S.A., INC.

By:_____
    Name:
    Title:


ATTEST:

By: /s/ David F Marceau
    Name: David F Marceau
    Title: Secretary

CHEVRON CREDIT BANK, NATIONAL ASSOCIATION

By: /s/ JS Osborne
    Name: JS Osborne
    Title: President


ATTEST:

By:_____
    Name:
    Title:

GE MONEY BANK

By:_____
    Name:
    Title:

[CHEVRON/GE US ASSIGNMENT AND ASSUMPTION AGREEMENT]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption Agreement to be executed by their respective duly authorized officers as of the day and year first above written.

ATTEST:

                                             CHEVRON U.S.A., INC.

By:_____
   Name:
   Title:

                                             By:_____
                                                Name:
                                                Title:

ATTEST:

                                             CHEVRON CREDIT BANK, NATIONAL ASSOCIATION

By:_____
   Name:
   Title:

                                             By:_____
                                               Name:
                                               Title:

ATTEST:

                                             GE MONEY BANK

By: *[signature]*
   Name: Julie Schechter
   Title: General Counsel,
         Retail Consumer
         Finance

                                             By: *[signature]*
                                               Name: Margaret A Keane
                                               Title: SVP, GE Money Bank

[CHEVRON/GE US ASSIGNMENT AND ASSUMPTION AGREEMENT]

## SCHEDULE 1

### Card Assets

(a) The consumer Credit Card accounts established or acquired at any time prior to the Cut-off Time in favor of a Cardholder pursuant to which such Cardholder may effect the purchase of goods or services from the applicable Seller, its Affiliates, licensees or designated agents, including, but not limited to, the following (the "Accounts"):

    (i) active accounts with charging privileges,

    (ii) inactive accounts with charging privileges,

    (iii) inactive accounts without charging privileges, whether due to expired plastic or other factors,

    (iv) accounts that have been voluntarily closed by the Cardholder or have been closed by Seller whether or not such accounts have outstanding balances owed,

    (v) accounts that have had charging privileges revoked due to non-payment,

    (vi) accounts that have been flagged for potential fraudulent activity, bankruptcy, or deceased status, and

    (vii) accounts that have been charged-off due to non-payment, bankruptcy, deceased, fraudulent or other derogatory status, including accounts being worked by any of the Sellers and accounts currently placed with Third-Party agencies for collection.

The information available regarding the foregoing items described in this paragraph (a) are limited to the following time periods: (a) copies of invoices are available for six (6) months after the Billing Date, (b) invoice data is available for four (4) years prior to the date on which such data is extracted, (c) payment information is available for twenty-four (24) months prior to the date on which such information is extracted, (d) statements are available for seven (7) years prior to the date on which such statements are extracted, (e) information regarding charged-off accounts is available since 2003, and (f) billing history on accounts is available since 2003.

(b) All amounts accrued or owing to the Sellers from Cardholders with respect to the Accounts as of the Cut-off Time (including any amounts accrued or owing for the payment of goods and services, late fees, over-the-limit fees, finance charges, returned check fees, and any other interest, charge, fee or expense imposed on or incurred with respect to such Account), net of the amount of any balance on an Account reflecting a credit in favor of a Cardholder (the "Accounts Receivable"), and the right to receive all payments in respect of the Accounts Receivable, including charged-off Accounts Receivable.

(c) The following documents and agreements of the Sellers:

    (i) the Master File, including demographic information (such as Cardholders' names/addresses, social security number (for newer accounts), and date of birth (to the

extent these are included in Sellers' files), other authorized users, phone numbers (some may be invalid), etc.); Account information (such as cardholder's account number and/or plastic number, date account was opened/closed/or lost, account status (including Lost or stolen)); Billing information (such as billing cycle, past statement dates, etc.); Plastic information; Historical data information (such as account activity for one to three years); Money information (such as current balances, last statement and previous statement balances, promotional money, billed transaction detail, unbilled transaction detail, including, at a minimum, Transaction Amount; Transaction Date; Merchant description; Transaction type (payment, sales, returns, etc.)); Memo information (such as Cardholder memos and Collections memos (i.e., promises to pay)).

    (ii)    applications (for six (6) months prior to the Closing Date to the extent held by Sellers) to establish an Account and outstanding solicitations for applications to establish an Account,

    (iii)    Cardholder Agreements relating to Accounts,

    (iv)    electronic files containing Charge Slips, Credit Slips and Billing Statements (for twelve (12) months prior to the Closing Date) relating to Accounts, and

    (v)    checks and other forms of payment with respect to Accounts, other than payments properly posted by the Sellers prior to the Cut-off Time.

The foregoing items described in this paragraph (c) shall be referred to as the "Account Documents"; *provided, however*, that the term "Account Documents" shall not include (i) any such items that cannot be identified and segregated by the Sellers from the Sellers' other books and records without undue expense and effort and are not material to the Card Business and (ii) all information with respect to Cardholders not processed by, or maintained on, the information systems operated by the Sellers or their Affiliates (the "Excluded Cardholder Information").

(d)    All claims, causes of action and suits which the Sellers have or may have against Third Parties exclusively in connection with the foregoing assets or the Assumed Liabilities.

# SCHEDULE 2

## Assumed Liabilities

(a) Upon and following the Closing, all obligations under the Cardholder Agreements relating to Accounts, including payment of credit balances as of the Closing on the Sellers' books and records but only to the extent such obligations arise from a fact, circumstance or event first existing or occurring following the Closing (unless such obligation is reflected on the Sellers' books and records as of the Closing).

(b) Liabilities assumed pursuant to Section 2.4(d).

(c) All Liabilities arising out of ownership of the Card Assets or the operation of the Card Business from a fact, circumstance or event first existing or occurring following the Closing.

(d) All Deposit Liabilities of Chevron Bank.

(e) The Buyer shall continue to process, account for, and permit charges and adjustments (i) for goods and services under the direct marketing program ("Direct Marketing Program") or otherwise, (ii) with respect to memberships in Chevron Travel Club, Inc. and (iii) with regard to any other Cardholder member benefit programs; *provided* that all Liabilities under such Direct Marketing Program, Chevron Travel Club, Inc. and Cardholder member benefit programs are the responsibility of the Sellers.